52 P.3d 325

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Melquiades DOMINGUEZ,
Defendant–Appellant.**

No. 26791.

Court of Appeals of Idaho.

July 23, 2002.

Richard L. Harris, Caldwell, for appellant.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

Melquiades Dominguez appeals from the denial of his motion to suppress evidence seized during a warrantless search.

# I.

## FACTS AND PROCEDURAL HISTORY

Dominguez was charged with possession of a controlled substance, Idaho Code § 37–2732(c), after police officers found a small bindle of methamphetamine in his wallet during a traffic stop. Dominguez moved to suppress the evidence as fruit of an illegal warrantless search. The following facts are drawn from the evidence presented at the suppression hearing.

Officers Norman Carter and Jason Bruner of the Boise Police Department stopped a pickup that was going the wrong way on a one-way street in downtown Boise shortly before midnight. The driver, Dominguez, was able to produce a driver's license from his wallet, but no registration or proof of insurance. Because Dominguez's eyes appeared red and glassy, the officers decided to conduct field sobriety tests.[1] Officer Carter testified that Dominguez handed his wallet to a female passenger, Rosa Pina, before exiting the vehicle. While Officer Bruner conducted the tests, Officer Carter engaged Pina in conversation. She gave Carter her name, but did not have any identification. She also told Carter that she was Dominguez's wife and that they had an eight-month-old baby.

After speaking briefly with Pina, Officer Carter moved behind the pickup to put himself into position to be able to observe Pina as well as Officer Bruner testing Dominguez. Officer Carter testified that he saw Pina bending over and reaching under the seat. Believing that she was trying to hide something, Officer Carter moved forward and looked through the passenger window. He stated that he saw Pina trying to remove something through a small hole in the bottom of Dominguez's wallet. He then asked her what she was doing and instructed her to exit the vehicle. According to Officer Carter, Pina reacted to his question by handing him the wallet as she exited the truck.

Pina's version of the events differs from Officer Carter's in several important respects. Pina testified that Dominguez did not hand her his wallet; he placed it on the driver's seat when he exited the pickup truck. She stated that it fell on the floor when she slid away from the driver's side window after Officer Carter moved away. She merely picked up the wallet, looked to see if anything had fallen out, and returned it to the driver's seat. She also denied handing the wallet to Officer Carter. According to her testimony, Officer Carter removed the wallet from the pickup after ordering her to exit.

Officer Carter stated that upon taking the wallet, he immediately felt a small lump. He said that, based on his experience, it felt like a powdery substance in a baggie, which he believed to be a controlled substance. He then reached into the wallet and removed a small amount of white powder wrapped in plastic that appeared to be methamphetamine. Both Dominguez and Pina were arrested for possession of a controlled substance.

Dominguez's suppression motion was denied. He then entered a conditional guilty plea reserving the right to appeal from the denial of his motion. This appeal followed.

# II.

## DISCUSSION

On review of a decision to grant or deny a motion to suppress evidence, this Court employs a split standard of review. We will defer to the trial court's findings of fact if they are supported by substantial competent evidence, State v. Hawkins, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998); State v. Heinen, 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988), but we exercise free review in determining whether, on the facts found, the search complied with the Fourth Amendment standards. Hawkins, 131 Idaho at 400, 958 P.2d at 26; Heinen, 114 Idaho at 658, 759 P.2d at 949.

Dominguez's sole argument on appeal is that the district court's findings of fact are contrary to the objective evidence; he does not argue that the district court misapplied the law to the facts as found. Thus, the only issue before this Court is the sufficiency of

1. Dominguez passed the sobriety tests and was never accused of driving while intoxicated.

the evidence to support the trial court's findings. However, a discussion of the applicable law is necessary to show the district court's factual findings' legal significance.

■ The Fourth Amendment guarantee against unreasonable searches is implicated when police search things or places in which the defendant has a reasonable expectation of privacy. *Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687–1688, 109 L.Ed.2d 85, 92–93 (1990); *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1739, 80 L.Ed.2d 214, 223 (1984); *Hawkins,* 131 Idaho at 400, 958 P.2d at 26. Warrantless searches are per se unreasonable unless they come within one of the narrowly drawn exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *Hawkins,* 131 Idaho at 400, 958 P.2d at 26. A search pursuant to consent voluntarily given is such an exception. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 859 (1973); *State v. Whiteley,* 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App.1993); *State v. Rusho,* 110 Idaho 556, 558, 560, 716 P.2d 1328, 1330, 1332 (Ct.App.1986). The voluntariness of consent is evaluated in light of all the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047, 36 L.Ed.2d at 862; *State v. Huskey,* 106 Idaho 91, 94, 675 P.2d 351, 354 (Ct.App.1984). It is the State's burden to prove that consent was voluntarily given rather than the result of duress or coercion, direct or implied. *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045, 36 L.Ed.2d at 859; *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797, 802 (1968). Consent may be expressed through words, gestures, or other conduct. *State v. Fleenor,* 133 Idaho 552, 555, 989 P.2d 784, 787 (Ct.App.1999). The consent need not be obtained from the defendant; it may be acquired from a third-party with sufficient authority over the premises or item searched. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974).

Although the district court made no express finding of consent to the search, the court did find that Pina handed Dominguez's wallet to Officer Carter without any demand that she do so. We think it is implicit in the court's findings that Pina consented to Officer Carter's inspection of the wallet. *See State v. Brauch,* 133 Idaho 215, 218, 984 P.2d 703, 706 (1999) ("[T]his Court gives due deference to any implicit findings of the trial court supported by substantial evidence."); *State v. Frank,* 133 Idaho 364, 367, 986 P.2d 1030, 1033 (Ct.App.1999) (same). Pina's claim that she was Dominguez's wife and his action in handing the wallet to Pina gave the officers good reason to believe that she had authority to consent to the search. *See Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161 (1990) (holding that search is valid if the consenting party reasonably appears to have authority to consent to search); *Brauch,* 133 Idaho at 219, 984 P.2d at 707; *State v. Misner,* 135 Idaho 277, 279, 16 P.3d 953, 955 (Ct.App. 2000).

The district court's express and implied findings regarding consent are supported by Officer Carter's testimony that Pina handed him the wallet without request from him just after he asked her what she was doing with it. We must accept the district court's finding based on that testimony unless the testimony is disproven by other conclusive evidence.

Dominguez contends that a tape recording made by Officer Carter during the traffic stop contradicts Officer Carter's testimony and confirms Pina's version of how Officer Carter came into possession of the wallet. The recording can be divided into three parts: (1) Officer Carter's initial conversation with Pina (which does not include any discussion of the wallet or request that she exit the vehicle), (2) Officer Carter's conversations with Pina and Dominguez subsequent to the search and discovery of drugs, and (3) Officer Carter's interrogation of Pina at the police station. From the sounds in the recording, it appears that the tape recorder was stopped between each of these sections.

The recording begins just before Officer Carter instructed Dominguez to exit the car and go with Officer Bruner for sobriety testing. That portion is followed by the conversation regarding Pina's identity and activities

that night. This portion of the tape does not impeach either Pina's or Officer Carter's version of this conversation, which are essentially the same. This conversation is followed by approximately twenty seconds of background noise. When the conversation resumes, Officer Carter is questioning Pina about finding another woman's identification in her jacket pocket. Both Pina and Officer Carter agreed that this conversation occurred after Pina had been removed from the vehicle. Thus, the critical conversation to which Officer Carter testified, when he asked Pina what she was doing and instructed her to exit the vehicle, was not recorded. From changes in background noise, it appears that Officer Carter turned his tape recorder off before questioning Pina about the wallet and turned it back on after she had been taken into custody. Officer Carter's testimony placed the discovery of the drugs within this unrecorded period. Pina testified that Officer Carter retrieved the wallet from the pickup after asking her to exit, also during the unrecorded period. The recording indicates that about two minutes after Pina's last conversation with Officer Carter, she was handcuffed. After telling Pina that she was under arrest for possession of a controlled substance, Officer Carter had a short conversation with Dominguez. He told Dominguez that there's "a bunch" of drugs in the pickup; there is no mention of the wallet. Dominguez denies owning the pickup, but Officer Carter expresses disbelief. At this point the tape recorder is turned off again. The remainder of the recording is Officer Carter's questioning of Pina, apparently at the police station, and sheds no light on the factual questions in this appeal.

The tape recording gives reasons to be skeptical about Officer Carter's testimony. One must wonder why Officer Carter failed to record the most critical part of his encounter with Pina while recording a great deal of relatively trivial conversation. This Court has noted that "[a] trial court most certainly may consider the absence of a recording, when the interrogating officer conveniently could have made one, in evaluating the officer's credibility. Thus, the failure to record an interrogation may be a factor in assessing the accuracy and truthfulness of the officer's account of the event." *In the Interest of Doe*, 130 Idaho 811, 815, 948 P.2d 166, 170 (Ct.App.1997).[2] However, the fact that the tape was evidently turned off during a portion of the encounter does not *prove* that Officer Carter provided false testimony. Unfortunately, neither the prosecutor nor Dominguez's counsel questioned Officer Carter about the completeness of the recording. A fact finder could also be justifiably dubious about Officer Carter's testimony that he could discern that a small lump inside the leather wallet (which is among the exhibits before this Court on appeal) was a "powdery substance" as distinguished from folded currency, a wad of tissue, a packet of prescription pills or any of a multitude of other materials that could form a lump inside a wallet. Nevertheless, we are governed by a standard of great deference in reviewing factual findings of a trial court. On a suppression motion, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence and draw factual inferences is vested in the trial court. *State v. Fain*, 116 Idaho 82, 86, 774 P.2d 252, 256 (1989). *See also State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Silva*, 134 Idaho 848, 853, 11 P.3d 44, 49 (Ct.App. 2000). Here, the trial judge, who had the opportunity to view both witnesses while they were testifying and evaluate their demeanor found Officer Carter's testimony to be credible. The officer's testimony is not disproven by the audio recording nor so inherently improbable that this Court can say that the district court's findings are unsupported by substantial evidence. Therefore, the district court's findings of fact, and its denial of the suppression motion based upon those findings, will not be overturned on appeal.

### III.

### CONCLUSION

The district court's findings of fact are supported by substantial and competent evi-

---

**2.** The Idaho Supreme Court has commented that a trial court, upon observing that a pattern of "mistakes" (such as turning off tape recorders at critical moments) has developed, "on seeing yet another 'mistake,' might readily decide to view such circumstance with a jaundiced eye, and rule accordingly." *State v. Guzman*, 122 Idaho 981, 984 n. 1, 842 P.2d 660, 663 n. 1 (1992).

dence in the record. Therefore, the denial of Dominguez's suppression motion is affirmed.

Judge GUTIERREZ and Judge Pro Tem JUDD concur.