# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41713

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 512 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 4, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STEVEN KENNETH BOWMAN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Order denying motion to suppress, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Steven Kenneth Bowman appeals from the district court's order denying his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Shortly after midnight, Officers Jones and Miller of the Boise Police Department stopped a vehicle with a cancelled registration. Bowman was the passenger and registered owner of the vehicle and his girlfriend was the driver. Officer Jones spoke with Bowman while Officer Miller spoke with the driver. Upon making contact, Officer Jones noticed that Bowman was not wearing his seatbelt. While speaking with Bowman and the driver, both officers noticed that Bowman appeared to be very nervous, but was otherwise cooperative in answering Officer Jones' questions. Officer Jones testified that Bowman engaged in "repetitive behavior," such as

1

reaching around his car despite instruction not to do so, and he continued to open his glove box and "look at the same paperwork that he already looked at." Officer Miller further testified that Bowman's "breathing rate was accelerated" and he was "rubbing his hands on his pants." Bowman also disclosed to Officer Jones that he had a prior criminal history consisting of drug charges and unlawful possession of a firearm.

During this initial contact, Officer Miller contacted dispatch to conduct a license and warrants check. He also requested a drug dog, based on Bowman's exhibited nervousness. Dispatch advised Officer Miller that the driver had a suspended driver's license and an active warrant for her arrest. Officer Miller then asked the driver to step out of the vehicle, placed her under arrest, and secured her in the back seat of the patrol car. Officer Bonas of the Boise Police Department subsequently arrived on scene with a drug dog, at which time Officer Jones asked Bowman to exit the vehicle.

As Bowman exited the vehicle, Officer Jones explained that due to Bowman's past weapons charges, he was going to pat search Bowman for weapons. Bowman offered no objections and indicated that he had a pocket knife in the pocket of his jacket, which Officer Jones removed. At the commencement of the search, Officer Miller, who was observing the pat search, asked Bowman if he could search the vehicle. Bowman refused his consent. As the pat search continued, Officer Jones felt "a large hard object" in one of Bowman's pant pockets. When asked what the object was, Bowman responded that he was not sure and gave Officer Jones permission to reach into his pocket and identify the object. Officer Jones identified the object to be a digital scale and upon learning that it was not a weapon, he placed the scale back into Bowman's pocket. Officer Jones found no other weapons or contraband on Bowman's person.

Officer Bonas walked the drug dog around Bowman's car. Officer Jones determined to write Bowman a citation for failing to wear his seatbelt and returned to his car. Officer Miller questioned Bowman about the scale. When asked why he had the scale, Bowman stated that he had it for his "lettering," which he explained to mean that he used the scale to weigh mail to determine the appropriate postage. Officer Miller then asked Bowman if he could see the scale, to which Bowman declined consent. After the drug dog failed to alert on the car, Officer Bonas asked Bowman if he could see the scale. Bowman produced the scale upon Officer Bonas' request. Officer Bonas testified that, upon examining the scale, he could see small particles of

2

what appeared to be drug residue on the surface of the scale. He then placed the scale on the ground and directed the drug dog to sniff the scale, to which the dog alerted as to the presence of drugs. Bowman was placed under arrest, and a subsequent search of the vehicle revealed a bag with drug paraphernalia and what appeared to be drug residue under the passenger seat.

Bowman was charged with felony possession of a controlled substance, Idaho Code § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A. Bowman was also charged with a persistent violator enhancement, I.C. § 19-2514. He filed a motion to suppress the evidence obtained during the traffic stop, arguing that the initial pat search of his person for weapons was not supported by reasonable suspicion; and even if it was, he did not voluntarily consent to the officers taking possession of the scale, the officers unreasonably extending the duration of the stop when the drug dog failed to alert on the car, and the officers searching his car was unlawful. Following a hearing, the district court denied the motion. Pursuant to a plea agreement, Bowman conditionally pled guilty by way of an *Alford*[1] plea to possession of a controlled substance, reserving his right to appeal the district court's denial of his motion to suppress, and the State dismissed the drug paraphernalia charge and withdrew the persistent violator enhancement. The district court imposed a unified seven-year sentence, with two and one-half years determinate. Bowman timely appeals.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

## A.    The Frisk

Bowman claims that the pat search was unlawful.  To be reasonable, a search must be authorized by a warrant that is based on probable cause, unless one of the exceptions to the warrant requirement applies.  *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Bishop*, 146 Idaho 804, 818, 203 P.3d 1203, 1217 (2009).  One such exception is the pat search for weapons acknowledged by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  Under *Terry*, an officer may conduct a limited pat search, or frisk, of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons.  *Terry*, 392 U.S. at 16, 30.  *See also Florida v. J.L.*, 529 U.S. 266, 270 (2000).  Such a frisk is justified only when, at the moment of the frisk, the officer has reason to believe that the individual he or she is investigating is armed and presently dangerous to the officer or to others and nothing in the initial stages of the encounter dispels the officer's belief.  *Terry*, 392 U.S. at 24, 30.  Such a weapons frisk is allowed to enable a police officer to interact with the individual without fear of violence being inflicted upon the officer or others.  *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 21 (2007); *State v. Rawlings*, 121 Idaho 930, 933, 829 P.2d 520, 523 (1992).  Whether such a search is justified is evaluated in light of the "facts known to the officers on the scene and the inference of the risk of danger reasonably drawn from the totality of the circumstances." *State v. Wright*, 134 Idaho 79, 82, 996 P.2d 298, 301 (2000).

Bowman acknowledges that before he was frisked, Officer Jones knew he was armed because Bowman had admitted to having a knife.  He argues, however, that the frisk was still unwarranted because the officer had no reasonable suspicion that Bowman was dangerous.  In support of this argument, he relies on *Henage*.  In *Henage*, the Court determined that the officer's frisk of Henage was not justified because the totality of the circumstances did not create a reasonable inference that he posed a safety risk to the officer or others.  *Henage*, 143 Idaho at 662, 152 P.3d at 23.  The officer testified that during his encounter with Henage, Henage admitted to having a knife and was acting nervous, but he was otherwise cooperative and polite. The officer also testified that he had known Henage for several years and never had a combative experience with him.  The Court determined that the officer failed to connect Henage's nervousness with a risk to the officer's safety.  The Court noted that the officer did not "articulate any furtive movements or behavior from which a person in [his] position could reasonably conclude [that Henage] posed any risk.  [Henage] made no suspicious movements for

4

his pockets or other area from which a weapon might be readily retrieved." *Id.* The Court also described the encounter between Henage and the officer as amiable and non-threatening, and noted that Henage had never given the officer any trouble in past encounters. Accordingly, the Court determined that the officer failed to point to specific and articulable facts that would reasonably warrant a search for weapons. *Id.*

Following the Idaho Supreme Court's decision in *Henage*, in analyzing the lawfulness of a frisk, the Court identified several factors that influence whether a reasonable person in an officer's position would conclude that a particular person was armed and dangerous, including:

> whether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

*Bishop*, 146 Idaho at 819, 203 P.3d at 1218.

In this case, in denying Bowman's motion to suppress, the district court found the following:

> The relevant testimony from officers Jones and Miller is uncontroverted, and adequately supports their decision to perform a pat-down search of [Bowman] for weapons. This testimony . . . is that [Bowman] exhibited a degree of nervousness that significantly exceeded that which the officers normally observed in similar situations; that is, he repeatedly reached around the inside of the vehicle despite warnings not to do so, conducted repetitious searches of documents in the glovebox of the car, and rubbed his legs repeatedly. Further in the course of the initial conversation between officer Jones and [Bowman], [Bowman] disclosed a history of drug and weapons charges. To be sure, [Bowman] was compliant and polite in his responses to questions, but the totality of the circumstances, in this Court's view, is sufficient to justify the officers' decision to direct [Bowman] to exit the vehicle to conduct a pat-down search for weapons.

The district court also noted that Bowman had a knife on his person, which he disclosed to Officer Jones. Based on the totality of the circumstances, the court determined that the pat search of Bowman was justified.

We conclude that it was objectively reasonable for Officer Jones to conduct a pat search in this instance. Similar to *Henage*, Bowman admitted that he had a knife in his pocket and he appeared nervous. However, unlike the officer's testimony in *Henage*, Officer Jones testified to Bowman's movements and behavior which led him to reasonably conclude that Bowman posed a

risk. Here, the encounter took place just after midnight, Bowman made repetitious and furtive movements while inside the vehicle, indicated that he possessed a weapon, appeared very nervous, and had a prior weapons charge. Further, unlike the officer in *Henage* who had prior encounters with Henage before the incident in question, there is no indication that Officer Jones, or the other officers involved for that matter, had any prior dealings with Bowman. Although Bowman was cooperative and polite while interacting with the officers, Officer Jones' safety concern was objectively reasonable in these circumstances. Therefore, the district court did not err in holding that the frisk was lawful.

**B.  Duration of the Stop**

Next, Bowman challenges the district court's conclusion that the officers did not unlawfully extend the duration of the stop. An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). A drug dog sniff is not a search and may be done during an investigative stop, but the use of the drug dog may not lengthen the duration of the stop. *Illinois v. Caballes*, 543 U.S. 405, 409-410, (2005); *see also State v. Aguirre*, 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct. App. 2005). "It is therefore not necessarily a Fourth Amendment violation for an officer who has stopped someone for a traffic violation to ask unrelated questions about drugs and weapons, or to run a drug dog around the perimeter of the vehicle." *Aguirre*, 141 Idaho at 563, 112 P.3d at 851. However, if an officer questions a driver about matters unrelated to the traffic stop after the purpose of the stop has been fulfilled, the questioning, no matter how short, extends the duration of the stop and is an unwarranted intrusion upon the privacy and liberty of the vehicle's occupants. *Gutierrez*, 137 Idaho at 651-53, 51 P.3d at 465-67. Nevertheless, an officer may employ a drug dog while another officer checks for identifying information. *State v. Parkinson*, 135 Idaho 357, 362-63, 17 P.3d 301, 306-07 (Ct. App. 2000).

Bowman contends that the stop was unreasonably extended when the drug dog failed to alert on the vehicle, thus dispelling the officers' suspicion of drug activity. Bowman correctly recognizes that once the purpose of the stop had been fulfilled, i.e., by the issuance of the seatbelt violation citation, any continued detention absent reasonable suspicion was unlawful. *See Gutierrez*, 137 Idaho at 652, 51 P.3d at 466. In support of his argument, he claims that "while Officer Miller was questioning [him] and Officer Bonas was conducting the sniff of the

6

car, Officer Jones returned and gave [him] a ticket for not wearing his safety belt." Accordingly, he asserts that when the drug dog failed to alert as to the presence of drugs, any justification for his detention ended "by delivering the citation and by reasonable suspicion dissipating."

Although Bowman claims that the citation was delivered to him while the drug dog was being deployed and Officer Miller was questioning him, there is no evidence in the record to that effect.[2] The only testimony offered at the motion to suppress hearing as to the issuance of the citation was in regard to who wrote the citation. There was no testimony as to who gave the citation to Bowman or when the citation was given to him. The only evidence in our record as to when the citation was issued is found in Officer Jones' police report where he states, "While issuing [Bowman] a citation for failure to wear his seatbelt, Officer Bonas indicated that he observed a white crystal like powder on the scale as well as indicated that his drug K9 had alerted on the scale." Thus, the evidence appears to be that Officer Jones did not deliver the citation to Bowman at least until after the drug dog alerted on the scale. Accordingly, the purpose of the stop had not yet been fulfilled when the drug dog failed to alert on the vehicle. Furthermore, the purpose of the stop transformed into a drug investigation upon the drug dog's alert on the scale, which gave the officers probable cause to expand the scope of the stop. The purpose of a stop is not permanently fixed at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop. *Parkinson*, 135 Idaho at 362, 17 P.3d at 306. Thus, the initial purpose of the stop transformed from a traffic violation to a drug investigation for which Bowman was subsequently arrested.[3] Therefore, the officers did not unlawfully extend the duration of the stop.

---

[2] In support of this contention, Bowman cites to Officer Miller's testimony at the hearing before the district court on his motion to suppress:

[Counsel]: And eventually you wrote [Bowman] a ticket for a seatbelt [violation].
[Officer Miller]: I didn't write it. Officer Jones wrote the ticket. I did not.

[3] Bowman does not challenge the search of the vehicle following his arrest. He does contend, however, that the court improperly considered his prior refusal of consent as a factor in its determination of probable cause to search the vehicle which "tainted" the court's reasonable suspicion analysis. The district court did not include that factor in its reasonable suspicion analysis and, moreover, it was not determinative of any conclusion reached by the court.

## C.    Voluntariness of Consent

Bowman claims that Officer Bonas' search and seizure was unlawful absent valid consent. He contends that his consent to allow Officer Bonas to see the scale was not voluntary.[4] A search conducted with consent that was freely given is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). It falls to the State to prove, by a preponderance of the evidence, that consent was voluntary as opposed to being the result of duress or coercion, direct or implied. *Schneckloth*, 412 U.S. at 221. We stated the applicable analysis in *State v. Jaborra*, 143 Idaho 94, 137 P.3d 481 (Ct. App. 2006):

> The Fourth Amendment to the United States Constitution prohibits unreasonable searches. A search conducted by law enforcement officers without a warrant is per se unreasonable unless the State shows that it fell within one of the narrowly drawn exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). A search conducted with consent that was voluntarily given is one such exception. *Schneckloth*, 412 U.S. at 219; *Dominguez*, 137 Idaho at 683, 52 P.3d at 327. It is the State's burden to prove, by a preponderance of the evidence, that the consent was voluntary rather than the result of duress or coercion, direct or implied. *Schneckloth*, 412 U.S. at 221; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *State v. Fleenor*, 133 Idaho 552, 554, 989 P.2d 784, 786 (Ct. App. 1999); *Dominguez*, 137 Idaho at 683, 52 P.3d at 327. A voluntary decision is one that is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth*, 412 U.S. at 225. *See also Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). An individual's consent is involuntary, on the other hand, "if his will has been overborne and his capacity for self-determination critically impaired." *Id.* In determining whether a subject's will was overborne in a particular case, the court must assess "the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226. Thus, whether consent was granted voluntarily, or was a product of coercion, is a factual determination to be based upon the surrounding circumstances, accounting for subtly coercive police questions and the possibly vulnerable subjective state of the party granting the consent to a search. *Id.* at 229; *Hansen*, 138 Idaho at 796, 69 P.3d at 1057; *Dominguez*, 137 Idaho at 683, 52 P.3d at 327.
>
> A determination of voluntariness does not turn "on the presence or the absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226. Factors to be considered include whether there were numerous officers involved in the

---

[4]    Bowman alternatively argues that his consent was invalidated by his unlawful detention. However, given our conclusion that the duration of the stop had not been unlawfully extended, we need not address this argument.

confrontation, *Castellon v. United States*, 864 A.2d 141, 155 (D.C. 2004); *United States v. Jones*, 846 F.2d 358, 361 (6th Cir. 1988); the location and conditions of the consent, including whether it was at night, *United States v. Mapp*, 476 F.2d 67, 77-78 (2d Cir. 1973); whether the police retained the individual's identification, *United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir. 1984); whether the individual was free to leave, *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996); *Chemaly*, 741 F.2d at 1353; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002); and whether the individual knew of his right to refuse consent, *Schneckloth*, 412 U.S. at 248-49; *Chemaly*, 741 F.2d at 1353; *State v. Jones*, 126 Idaho 791, 793, 890 P.2d 1214, 1216 (Ct. App. 1995). Although the presence of multiple police officers does not, standing alone, establish coercion, and there is no requirement that police inform the individual that he is free to leave or that he has a right to refuse consent, these factors are nevertheless relevant when viewing the totality of the circumstances. *See Robinette*, 519 U.S. at 39-40; *Schneckloth*, 412 U.S. at 248; *Jones,* 846 F.2d at 361; *Chemaly*, 741 F.2d at 1353; *Castellon*, 864 A.2d at 155; *Gutierrez*, 137 Idaho at 651, 51 P.3d at 465; *Jones,* 126 Idaho at 793, 890 P.2d at 1216.

The trial court is the proper forum for the "careful sifting of the unique facts and circumstances of each case" necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal. *State v. Post*, 98 Idaho 834, 837, 573 P.2d 153, 156 (1978), *overruled on other grounds*; *State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981). In short, whether a consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen*, 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct. App. 1999).

*Id*. at 97-98, 137 P.3d at 484-85.

Bowman argues his consent was mere acquiescence to the officers' continued questioning and not voluntary. In support of his argument, Bowman points out that it was late at night; there were three armed officers and one drug dog on scene; he was never told he was free to leave; and he had been subjected to continuous questioning, including two requests to search his car. The district court declined to find that Bowman's consent to Officer Bonas was impliedly coerced as a result of these circumstances.[5] In finding that Bowman's consent was voluntary, the district court made the following findings:

---

[5] The court made the same findings with regard to Bowman's earlier consent to allow Officer Jones to see the scale during the initial pat search.

While it is true that there were multiple officers on the scene, this fact alone is not dispositive, and it must be remembered that [the] officers had two subjects to contend with, not merely the defendant. Three officers to manage two persons very late at night is not an unusual ratio, even if one of the officers arrived in a separate police car with a drug-detection dog in tow. Undoubtedly, the presence of the K9 unit added to the stress of the encounter for the defendant, but this fact alone is also insufficient to demonstrate that his will was overborne. . . . While Officer [Bonas] did not explicitly inform the defendant that he could refuse to show him the scale, the question was posed in such a way that the defendant was clearly invited to refuse consent if that was his desire.

In further support of the finding that Bowman's consent was voluntary, the district court pointed out that Bowman understood that he could freely deny the officers permission to retrieve the scale from his pocket. Bowman had exercised this very right when he denied permission to Officer Miller to search the interior of his vehicle as Officer Jones conducted the pat search and again when he denied Officer Miller permission to see the scale. Officer Miller honored Bowman's refusal of consent in each instance. Bowman was not badgered or threatened by the officers such that his will was overborne. Officer Bonas simply and politely asked Bowman if he could see the scale, to which Bowman validly consented. The district court's findings are appropriately based on the totality of circumstances and supported by substantial evidence.

## III.

## CONCLUSION

Bowman has failed to demonstrate the district court erred in denying his motion to suppress. Accordingly, Bowman's judgment of conviction is affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR**.