983 P.2d 225

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kevin Ronald BENSON, Defendant–Appellant.**

**No. 24575.**

Court of Appeals of Idaho.

July 21, 1999.

Alan E. Trimming, Ada County Public Defender; David J. Smethers, Deputy Public Defender, Boise, for appellant. David J. Smethers, argued.

Hon. Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson, argued.

SCHWARTZMAN, Judge.

Kevin Ronald Benson appeals from the district court's denial of his motion to suppress evidence seized pursuant to a third-party consensual search of the garage he was staying in. For the reasons stated below, we reverse and remand.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Boise City police dispatch received an anonymous phone call stating that someone in a residence located at 5019 Wylie Lane was "cooking methamphetamine." The caller also indicated that the woman who rented the home was named Laura Hilton. Boise City detectives checked their records and confirmed that Laura Hilton actually lived at 5017 Wylie. Thus, the detectives focused

their investigation on the residence located at 5017 Wylie.

On October 17, 1997, at approximately 10:30 p.m., detectives Michael Harrington and Dave Turnbough responded to the tip. During the course of surveilling the location, the detectives ran a license plate check on a vehicle parked at the home and discovered that the vehicle was registered in Trisha Stafford's name.

When their surveillance of the residence revealed no unusual conduct, the detectives knocked on the door and were greeted by Laura Hilton. The detectives told her they were investigating a phone call about a possible methamphetamine laboratory in her home and she invited them inside. The detectives asked Hilton who else was living at the residence and were informed that Hilton's four grandchildren also lived with her in the house.[1] In addition, she advised the detectives that her daughter, Trisha Stafford, lived in the detached garage, located about fifteen feet away from the home.

Thereafter, the detectives accompanied Hilton to the garage. Hilton knocked on the door and asked for Trish to come out. A younger woman exited the garage and closed the door behind her. Detective Harrington asked her if she was Trish Stafford and she responded affirmatively. The detectives identified themselves, told Stafford they were investigating a tip they had received about a possible methamphetamine laboratory on the premises and, for safety reasons, asked her if anyone else was in the garage. Stafford informed the detectives that her boyfriend was sleeping inside.[2]

While the detectives were talking to Stafford, she became very upset and made numerous requests that they leave the premises, stating that they had no right to be there on the property. After the detectives had spoken with Stafford for about two minutes, Stafford's boyfriend, Kevin Benson, exited the garage. Immediately thereafter, Benson

indicated that he was sick and sat down against the garage. Detective Harrington then observed a clear baggie with a green substance that appeared to be marijuana in Benson's shirt pocket. The detectives identified themselves and told Benson they were there to investigate a tip of a possible methamphetamine laboratory on the premises. In response, Benson stood up and became irate that the detectives were on the property. Benson was then arrested for possession of marijuana.

Because Stafford was screaming at her mother not to talk to the detectives and Benson was still angry, the two were separated for officer safety reasons while the detectives waited for back-up assistance to arrive. Detective Harrington testified that Stafford was screaming at her mother "that we did not have a warrant and not to give us permission to search." He next took Hilton aside and asked her if the garage area was hers, if she had access to it and if she had "stuff" inside. After receiving affirmative responses, Detective Harrington asked for and received Hilton's consent to enter and search the garage. Neither Stafford nor Benson was asked for or gave the detectives permission to enter and search the garage.

Benson was charged by criminal information with one count of manufacturing a controlled substance (methamphetamine) and one count of misdemeanor possession of a controlled substance (marijuana). Benson filed a motion to suppress all evidence seized as a result of Hilton's consent to search. The district court held a hearing and issued a written decision denying the motion, concluding that Hilton had common authority over the garage and thus actual authority to consent to a search thereof. Alternatively, the court held that even if Hilton did not have actual authority to consent, the detectives were reasonable in relying on Hilton's apparent authority to consent to a search.

1. Hilton identified the parents of her four grandchildren as follows: "My son has two children, and my daughter's two children."

2. Benson's privacy interest in the garage is not disputed on appeal. We note that the nature of Benson's living arrangements was not developed below. However, it is clear from the record that Benson had stayed overnight in the garage with Stafford on prior occasions and that on the evening of his arrest, he was staying overnight in the garage.

Thereafter, pursuant to an Idaho Criminal Rule 11 plea agreement, Benson entered a conditional guilty plea to one count of felony manufacturing a controlled substance and one count of misdemeanor possession of a controlled substance, reserving his right to appeal the denial of his suppression motion. The court sentenced Benson to serve a unified seven-year sentence, with four years fixed, and retained jurisdiction for 180 days.[3]

## II.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we employ a bifurcated standard. *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct.App.1998). We defer to the trial court's findings of fact if they are supported by substantial evidence and therefore not clearly erroneous, but we freely review the application of constitutional principles to the facts as found. *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). Whether a search comports with Fourth Amendment reasonableness requirements is a question of law over which we exercise free review. *Id.*

## III.

## ANALYSIS

A. **The District Court Erred In Determining That Hilton Had Common Authority Over The Garage**

Benson argues that the facts adduced at both the preliminary and suppression hearing demonstrate that Hilton did not have common authority over the garage and the district court erred in concluding otherwise. The state declines to address this issue, arguing instead that the only relevant inquiry on appeal is whether the detectives could have reasonably believed Hilton had authority to consent to a search of the garage. However, because the district court's denial of Benson's motion to suppress was based foremost on Hilton's common authority over the garage, and alternatively on her apparent

authority, we evaluate both bases of the district court's order.

Detective Turnbough testified that Hilton told him Stafford and Benson were living in the detached garage. When Hilton walked the detectives back to the garage, she knocked on the door and informed Stafford that the police were there to speak with her. Once Stafford stepped outside, Hilton testified that she returned inside her residence but overheard Stafford tell the police to go away because they did not have a search warrant.

Stafford testified that she lived in her mother's garage and babysat her brother's children in lieu of paying rent. The existence of this agreement was corroborated by Hilton: "My daughter stayed in the garage and took care of the four children in lieu of rent so that I could work." Stafford used a padlock to keep the garage locked in her and Benson's absence. Only she and Benson had keys to the padlock and hence access to the garage at all times. Because Hilton did not have a key to the padlock and the garage was always locked when Stafford and Benson were away, Hilton could not access the garage without obtaining Stafford's or Benson's permission. Hilton testified that although she stored holiday decorations and a freezer in the garage, she considered the garage to be her "daughter's residence."

Based upon this evidence, the district court found that Hilton possessed sufficient common authority over the garage to consent to a search thereof. We disagree. When the state seeks to justify a warrantless search by proof of voluntary consent, it bears the burden of demonstrating "that consent has been given, and that the person giving the consent had authority to do so...." *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986). In proving the validity of the consent given, the state "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United*

---

**3.** Benson's sentence was eventually suspended and he was placed on probation.

*States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974) (footnote omitted); *Johnson,* 110 Idaho at 522–23, 716 P.2d at 1294–95. Such authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7.

In *Johnson,* the Idaho Supreme Court recognized the doctrine of common authority as set forth in *Matlock,* but rejected the state's contention that a landlord had common authority over his tenant's home such that he could validly consent to a search thereof. Absent the state's ability to demonstrate that the landlord had mutual use of the property such that the tenant assumed the risk his landlord might permit the apartment to be searched, the landlord lacked authority to consent to a search of his tenant's residence. The Court cited, with approval, cases where a lessor or landlord was deemed to be without authority to consent to a search of a rental home, *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); an apartment, *People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974); a room in a rooming house, *State v. Warfield,* 184 Wis. 56, 198 N.W. 854 (1924); a hotel room, *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); or a locked locker, *Murdock v. State,* 664 P.2d 589 (Alaska App. 1983). *Cf. State v. Ham,* 113 Idaho 405, 406, 744 P.2d 133, 134 (Ct.App.1987) (where son lived in the mother's apartment, mother had free access to his bedroom, son was forbidden from locking the bedroom door when he was away, and son did not pay rent, mother had, at a minimum, common authority over the son's bedroom and could validly consent to a search thereof).

█ Applying this test, we conclude that Hilton did not possess common authority over the garage for most (i.e.consent) purposes. Hilton did not have mutual use, joint access or control over the garage for any purpose other than minimal storage. In addition, Stafford's and Benson's decision to padlock the garage when they were away from the premises, coupled with their retention of the keys to the padlock, demonstrate that neither Stafford nor Benson assumed the risk that Hilton would consent to a search of the garage. In effect, the relationship between Hilton and Stafford was akin to that of a landlord-tenant.

Thus, the district court erred in concluding that Hilton had common authority over the garage, and her consent to search cannot be upheld on this basis. Nevertheless, given the district court's alternative ruling, we must consider whether the detectives were reasonable in their reliance on Hilton's *apparent* authority to consent to a search of the garage.

**B. The District Court Erred In Concluding That The Detectives Reasonably Relied On Hilton's Apparent Authority To Consent To A Search Of The Garage**

The district court alternatively ruled that even if Hilton lacked common authority, a reasonable officer would have believed that, based on Ms. Hilton's statement made prior to the entry, that Ms. Hilton did have the apparent authority to consent to a search. She stated that she was the owner of the property and had items stored in the garage. Her daughter's screams [to] not talk to the police would have certainly created an impression in the officer's mind that Ms. Hilton did have the right to grant or withhold consent to search.

Benson challenges the district court's finding, arguing that there is a significant difference between applying the apparent authority doctrine to permit a third-party to waive an *absent* or *non-objecting* party's rights and applying the doctrine to allow a third-party to usurp the rights of a *present* and *objecting* party.

"Every encounter has its own facts and its own dynamics. So does every consent." *United States v. Morning,* 64 F.3d 531, 533 (9th Cir.1995). In *Matlock, supra,* the United States Supreme Court addressed third-

party consent in the context of shared premises, holding that "the consent of one who possesses common authority over premises or effects is valid as against the *absent, nonconsenting* person with whom that authority is shared." *Id* at 170, 94 S.Ct. at 993, 39 L.Ed.2d at 249 (emphasis added). The *Matlock* Court's decision addressed only third-party consent in instances where the consenting party has

joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id* at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7. The validity of third-party consent in instances where the nonconsenting party is *present* was left undecided, as was the legitimacy of the doctrine of apparent authority, which the Court explicitly declined to address. *See id.* at 177 n. 14, 94 S.Ct. at 996 n. 14, 39 L.Ed.2d at 253 n. 14.

Subsequently, the United States Supreme Court considered the doctrine of apparent authority in *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). In *Rodriguez*, the defendant's girlfriend called police from her mother's home to report a severe beating she had suffered at the hands of the defendant in their apartment. When the officers arrived, the girlfriend referred to the residence as "our" apartment and stated that she had clothes and furniture there. The record before the Court was unclear as to whether the girlfriend told the officers she was living at the apartment at that time or had lived there previously. Nevertheless, the officers accompanied the girlfriend to the apartment, where she opened the door with her key and then gave them permission to enter. Upon entry, the officers observed drugs and drug paraphernalia in plain view, whereupon they arrested Rodriguez, who was asleep at the time, and seized additional drug evidence in the bedroom.

The record revealed that the girlfriend had actually moved out of the apartment one month prior to the incident at issue and that she took the key without Rodriguez's knowledge. However, based on the information known to the officers at the time, the Court determined that the officers could have reasonably believed the girlfriend had common authority over the apartment and could therefore validly consent to their entry. The Court thus held that third party consent is valid if the facts available to police at the moment consent is given would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises, even though it is later discovered that the consenting party lacks such authority.

In *State v. McCaughey*, 127 Idaho 669, 904 P.2d 939 (1995), the Idaho Supreme Court adopted the *Rodriguez* Court's apparent authority formulation without modification. In *McCaughey*, the victim's daughter called the police to report the defendant's abuse of her mother. When officers arrived at the residence, they observed obvious signs of the victim's abuse. McCaughey was thereafter arrested at the scene for domestic battery and transported to jail. The victim remained at the scene and at some point informed an officer that she believed McCaughey had copious amounts of marijuana in the basement and shed. The victim offered to let an officer look in the home. The officer asked the victim if she was married to the defendant and if she lived in the home; the victim responded affirmatively to both inquiries. At the victim's suggestion, the officer followed her to the basement door, which was secured by two padlocks; the victim asked her daughter to retrieve the keys to the locks. The daughter returned a few seconds later with the keys, which the victim used to unlock the padlocks and open the door. Inside the room, the officer observed scales and what appeared to be marijuana. The victim next led the officer to a detached shed and unlocked the door, wherein the officer observed what appeared to be marijuana.

McCaughey was subsequently charged with trafficking in marijuana. He filed a motion to suppress, challenging the validity of the victim's consent. He argued that the victim lacked authority to give valid consent where she was in the process of moving from

the home, she did not have keys to the padlocked doors, and she rarely frequented the basement or shed. The trial court granted McCaughey's motion and the state appealed. Our Supreme Court reversed, holding

> that as long as the police officer reasonably believes that the person giving consent to a warrantless search has the authority to consent, the search is valid and the defendant's right against unreasonable searches and seizures pursuant to the Fourth Amendment to the United States Constitution and art. 1, § 17 of the Idaho Constitution is not violated, even though the consenter has no actual authority to consent.

*McCaughey,* 127 Idaho at 674, 904 P.2d at 944. This conclusion, similar to the *Rodriguez* holding, was based on those facts known to the officer at the time consent was given. In *McCaughey,* these facts included the following: the victim lived on the premises with her daughter on a full-time basis, the victim was married to the defendant, the victim's property was located on the premises, and the victim produced keys to the padlocks on the basement door. Consent based on apparent authority is subject, however, to the following caveat:

> [W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without *further inquiry.*

*McCaughey,* 127 Idaho at 672, 904 P.2d at 942, *quoting Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801, 111 L.Ed.2d at —— (emphasis added).

Thus, in assessing the reasonableness of an officer's reliance on a party's apparent authority to consent, the following variables remain open in the calculus:

> First, the third party may not generally have "joint access ... for most purposes"; his right of access may be narrowly prescribed. Second, the objector may·not be an "absent ... person"; he may be present at the time third party consent is obtained. Finally, the objector may not simply be "nonconsenting"; he may actively oppose the search.

*United States v. Impink,* 728 F.2d 1228, 1233 (9th Cir.1984).

## 1. Factors in the reasonableness calculus

### a. Hilton's right of joint access to the premises searched

As we have previously noted, Hilton's right of access to the detached garage was narrowly circumscribed to times when Stafford or Benson were on the premises. Stafford and Benson kept the garage padlocked in' their absence therefrom, and Hilton had no key to the padlock. However, what is relevant under the apparent authority doctrine is the detectives' knowledge at the time consent is obtained.

 It was elicited at the preliminary hearing that before entering the garage the detectives asked Hilton whether the garage belonged to her, whether she had access to it, and whether she had "stuff" inside, and that Hilton responded affirmatively. This information, standing alone, might have provided the detectives with an objectively reasonable basis to believe that Hilton had joint access to the garage and thus could validly consent to an entry or search thereof. However, the detectives were also aware that Stafford, Hilton's adult daughter, lived separately from Hilton in the detached garage with her boyfriend, Benson. In addition, both Stafford and Benson demanded that the detectives leave the property and then strenuously objected to the detectives' presence and entry into· the garage. Thus, under the totality of the circumstances known to the detectives at the time they obtained Hilton's consent, we conclude that the detectives lacked an objectively reasonable basis to believe that Hilton had joint access to and mutual use of the garage without some further inquiry.

### b. The presence of nonconsenting parties

During the detectives' investigation of the anonymous tip, they were met with cooperation from Hilton but with requests by Staf-

ford and Benson to leave the property. When Hilton led the detectives to the garage, she knocked on the door and told Stafford that the police were there to speak with her. The detectives informed Stafford of their investigation, whereupon she told them to remove themselves from her property. When Benson exited the garage and was told of the detectives' investigation, he also protested their presence and told them to leave the premises. At each step of the detectives' investigation they were implicitly, if not explicitly, aware that Benson and Stafford claimed an interest in the garage superior to Hilton's and did not want the detectives to enter. At a minimum, these factors should have cast doubt upon Hilton's ability to give valid consent and put the detectives on notice that *further inquiry* into the parties' respective relationship to the premises was necessary.

### c. Benson's and Stafford's active objections to the detectives' entry and search

The fact that Benson and Stafford actively voiced their objections to the detectives, rather than simply acquiescing to their presence and entry by mere nonconsent, i.e., silence, is significant. The importance of an active objection was implicitly recognized in our recent case of *State v. Frizzel*, 132 Idaho 522, 975 P.2d 1187 (Ct.App.1999), wherein this Court addressed the issue of apparent authority in the context of a consensual vehicle search. A police officer had stopped a vehicle on the suspicion that the driver was driving without a license. While speaking with the driver and the passenger, Frizzel, the officer noticed shotgun shells behind the seat and within either parties' reach. The officer asked the driver if there were any weapons or drugs in the vehicle and then asked for consent to search. The driver consented to the search both orally and in writing. During the course of the search, the officer discovered a backpack large enough to hold a weapon on the passenger side of the vehicle. The officer opened the pack and discovered plastic bags containing marijuana and $1,600 cash. The passenger indicated that the pack was his and accurately described the contents.

Frizzel was charged with possession of a controlled substance with the intent to deliver. He moved to suppress the contents of the pack, arguing that the search was improper. The district court granted Frizzel's motion to suppress and the state appealed, arguing that the driver possessed apparent authority to consent to a search of the passenger's pack. This Court agreed, noting that because the passenger was silent when the driver gave consent to search and his silence persisted until after the officer had searched the pack, "the officer had an objectively reasonable belief that Smith's consent to search the vehicle was all that was necessary to allow the officer [to] search the pack." *Id.* at 525, 975 P.2d at 1190.

When an individual who has a possessory interest in an item remains silent while a third party with apparent authority gives consent to search an item, it is objectively reasonable for a police officer to conclude that he "had all the consent that was constitutionally required." (citations omitted).

*Id. Frizzel* implies that an officer may not be able to rely on a third party's apparent authority to consent to a search when another party with a superior possessory interest in the property searched is present and objects or denies consent. *See and compare State v. Newsom,* 979 P.2d 100 (1998), *cert. denied,* 526 U.S. 1158, 119 S.Ct. 2048, 144 L.Ed.2d 215 (1999) (passenger's attempt to take own purse with her as she exited vehicle deemed indicative of her superior possessory interest and expectation of privacy in the item searched).

### 2. The detectives' reliance on Hilton's apparent authority was objectively unreasonable

■ The facts known to the detectives, or otherwise easily discoverable upon further inquiry, at the time of Hilton's consent, is determinative of the reasonableness of their reliance on her consent. The detectives knew that Stafford and Benson were living separate and apart from Hilton in the detached garage and that Hilton's use of this space was limited. Both Stafford and Benson vociferously demanded that the detectives leave the property. Despite these

strong vocal objections, the detectives separated the parties and sought the consent of Hilton, knowing full well that they could not obtain such consent from either Stafford or Benson. The detectives never sought to establish Stafford and Benson's interest in the garage, ignored their protests, and merely queried Hilton very cursorily and superficially as to her interest in the property. We find that such deliberate indifference to or conscious avoidance of Benson's and Stafford's interest in the garage, under the totality of the circumstances presented, renders the detectives' reliance on Hilton's apparent authority *objectively unreasonable.* While "[w]e do not hold that police must invariably seek consent from the suspect before relying on a third party's consent[,] ... when the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of third party consent is less certain." *Impink,* 728 F.2d at 1234 (citations omitted).

> [I]f the Fourth Amendment means anything, it means that the police may not undertake a warrantless search of defendant's property after he has expressly denied his consent to such a search. Constitutional rights may not be defeated by the expedient of soliciting several persons successively until the sought-after consent is obtained.

*People v. Mortimer,* 46 A.D.2d 275, 361 N.Y.S.2d 955, 958 (N.Y.App.Div.1974).

## IV.

### CONCLUSION

The record before us fails to support the district court's conclusion that Hilton had either actual or apparent authority to give valid consent to a search of the garage in which Benson was staying. Therefore, we reverse the district court's denial of Benson's motion to suppress and remand for proceedings consistent with the plea agreement and this opinion.

Chief Judge PERRY and Judge LANSING, concur.