**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36962**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 54** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: September 1, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| HOWARD W. LINENBERGER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment of conviction for possession of a controlled substance with intent to deliver, <u>affirmed</u>.

Larry D. Purviance, Hayden, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Howard W. Linenberger appeals from his judgment of conviction for possession of a controlled substance with intent to deliver. Specifically, Linenberger asserts that the district court erred by denying his motion to suppress. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

On October 10, 2008, a police detective received a report of suspected drug activity on a boat docked in a marina. The reporting party stated that the boat had docked several times in the past week, and he had observed several people come and go to the boat, each staying only a few minutes and one leaving that day barely able to walk. The citizen informant described the male he suspected of selling drugs from the boat and provided boat identification. The detective determined the boat belonged to Linenberger.

Based on this information, the detective and two police officers went to the marina. The detective stepped onto the boat, knocked on the door, and announced who he was. When Linenberger answered, the detective smelled an odor he associated with methamphetamine coming from the cabin. The detective asked Linenberger to step to the dock so they could talk. The detective asked if he could conduct a pat-down search for weapons and Linenberger consented. Linenberger admitted he had a knife in his right pocket. Upon searching that pocket, the detective found a cylinder that he believed might contain methamphetamine. The detective removed the cylinder and placed it on the ground. Linenberger thereafter admitted there was methamphetamine on the boat and gave consent to search the boat. Linenberger also told the detective that the cylinder contained methamphetamine. The detective searched the boat and found methamphetamine along with numerous items associated with the manufacture and sale of methamphetamine. The detective arrested Linenberger for possession of a controlled substance with intent to deliver. I.C. § 37-2732(a)(1)(A).

Linenberger filed a motion to suppress evidence, and the district court denied the motion. Linenberger entered a conditional guilty plea to the charge of possession of a controlled substance with intent to deliver and reserved his right to appeal the denial of the motion to suppress. The district court accepted Linenberger's guilty plea and sentenced him to a unified term of twelve years, with a minimum period of confinement of four years, and retained jurisdiction. Linenberger appeals.

## II.

## ANALYSIS

Linenberger argues that the district court erred by denying his motion to suppress. Specifically, Linenberger asserts that all evidence should be suppressed because the detective entered Linenberger's boat, detained him, conducted a pat-down search for weapons and searched his boat, all in violation of Linenberger's Fourth Amendment rights.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). For instance, the reasonableness of a given search or seizure is a question of law over which we exercise independent review. *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App.

2

1998). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Linenberger asserts that the detective illegally entered Linenberger's boat when the detective boarded the boat without permission and knocked on the door. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. *Payton v. New York*, 445 U.S. 573, 585 (1980).

Courts have extended Fourth Amendment protection to the curtilage, which is the area or buildings immediately adjacent to a home which a reasonable person may expect to remain private even though it is accessible to the public. *State v. Rigoulot*, 123 Idaho 267, 272, 846 P.2d 918, 923 (Ct. App. 1992). However, the presence of a police officer within the curtilage does not, by itself, result in an unconstitutional intrusion. *State v. Clark*, 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct. App. 1993). Just as there is an implied invitation for citizens to access a house by using driveways or pathways to the entry, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use. *Id.* A criminal investigation is as legitimate a societal purpose as any other undertaking that would normally take a person to another's front door. *Rigoulot*, 123 Idaho at 272, 846 P.2d at 923. Therefore, when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places ordinary visitors could be expected to go, observations made from such vantage points are not covered by the Fourth Amendment. *Id.*

Linenberger was using his boat as a residence at the time the detective knocked on the door. Therefore, it is appropriate to analogize Linenberger's boat to a home. Just as a pathway to the entry of a home is considered curtilage and impliedly open to public use, when the detective used the pathway to the door of Linenberger's boat to knock and initiate contact as part of a criminal investigation, the detective did no more than enter the curtilage of Linenberger's home, impliedly open to public use. Further, there must be means by which police can knock on the door of a boat to initiate some sort of contact with the occupants. Otherwise, the boat would unreasonably be rendered a police-free zone. Accordingly, the district court was correct to

3

conclude that, by doing no more than walking to the front door of Linenberger's boat to knock, the detective did not make an unconstitutional entry.

Linenberger also argues that, when the detective ordered him to step to the dock, Linenberger was illegally detained because the detective did not possess sufficiently reliable information that established a reasonable suspicion of criminal activity. Not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) stated:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Accounting for all of the surrounding circumstances, the critical inquiry when determining whether a seizure has occurred is whether a reasonable person would have felt free to disregard the police, decline the officer's request, or otherwise terminate the encounter. *State v. Page*, 140 Idaho 841, 843-44, 103 P.3d 454, 456-57 (2004).

The district court determined that the testimony of the detective and police officers was credible and that Linenberger had been asked, not ordered as Linenberger claimed, to step to the

dock to talk. Further, the detective testified that neither the detective nor the two other police officers displayed weapons or physically touched Linenberger. Taking into account all of the surrounding circumstances, a reasonable person would have felt free to decline the detective's request and terminate the encounter. Therefore, the district court did not err by concluding Linenberger was not detained within the meaning of the Fourth Amendment.

Even assuming Linenberger was detained, an investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts. *Terry*, 392 U.S. at 21; *see also Sheldon,* 139 Idaho at 983, 88 P.3d at 1223. The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990). Still, reasonable suspicion requires more than a mere hunch or "inchoate and unparticularized suspicion." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223.

Reasonable suspicion may be supplied by an informant's tip or a citizen's report of suspect activity. Whether information from such a source is sufficient to create reasonable suspicion depends upon the content and reliability of the information presented by the source, including whether the informant reveals his or her identity and the basis of the informant's knowledge. *See White*, 496 U.S. at 330; *Illinois v. Gates*, 462 U.S. 213, 233-34 (1983); *Adams v. Williams*, 407 U.S. 143, 146-47 (1972). An anonymous tip, standing alone, is generally not enough to justify a stop because an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. *Florida v. J.L.*, 529 U.S. 266, 269 (2000); *White*, 496 U.S. at 329. However, when the information from an anonymous tip bears sufficient indicia of reliability or is corroborated by independent police observations, it may provide justification for a stop. *White*, 496 U.S. at 331-32. Where the information comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of his or her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability. *Gates*, 462 U.S. at 233; *Williams*, 407 U.S. at 146-47;

*State v. O'Bryan*, 96 Idaho 548, 552, 531 P.2d 1193, 1197 (1975); *State v. Peterson*, 133 Idaho 44, 47, 981 P.2d 1154, 1157 (Ct. App. 1999); *Dunlap v. State*, 126 Idaho 901, 907, 894 P.2d 134, 140 (Ct. App. 1995).

Here, when the detective and police officers went to the marina, they did so based on a citizen informant's call. The reporting party, an employee of the marina, stated that the boat had docked several times in the past week and he had observed several people come and go to the boat, each staying only a few minutes and one leaving that day barely able to walk. The citizen informant also described the male he suspected of selling drugs from the boat and provided boat identification. Based on this information, the detective and two police officers went to the marina. The detective stepped onto the boat and knocked on the door. When Linenberger answered, the detective smelled an odor he associated with methamphetamine coming from the cabin. He also verified that Linenberger matched the description provided by the informant. The citizen informant's tip, corroborated by the detective's independent observations, provided sufficiently reliable information that established a reasonable suspicion of criminal activity. Therefore, even assuming Linenberger was detained, his detention was justified under the Fourth Amendment.

Linenberger additionally argues that the pat-down search for weapons conducted by the detective was impermissible because Linenberger did not voluntarily consent to it. A search conducted with consent that was voluntarily given is an exception to the warrant requirement of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). It is the state's burden to prove, by a preponderance of the evidence, that the consent was voluntary rather than the result of duress or coercion, direct or implied. *Schneckloth*, 412 U.S. at 222; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *Dominguez*, 137 Idaho at 683, 52 P.3d at 327; *State v. Fleenor*, 133 Idaho 552, 554, 989 P.2d 784, 786 (Ct. App. 1999). An individual's consent is involuntary if his or her will has been overborne and the individual's capacity for self-determination critically impaired. *Schneckloth*, 412 U.S. at 225. In determining whether a subject's will was overborne in a particular case, the court must assess the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation. *Id.* at 226. Thus, whether consent was granted voluntarily, or was a product of coercion, is a factual determination to be based upon the surrounding circumstances, accounting

6

for subtly coercive police questions and the possibly vulnerable subjective state of the party granting the consent to a search. *Id.* at 229; *Hansen*, 138 Idaho at 796, 69 P.3d at 1057; *Dominguez*, 137 Idaho at 683, 52 P.3d at 327.

The trial court is the proper forum for the careful sifting of the unique facts and circumstances of each case necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). In short, whether consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen*, 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct. App. 1999).

Linenberger asserts that, because the message to him was clear--either cooperate with the search, go to jail, or be charged with a crime--his consent to the pat-down search was not voluntary. The district court concluded that, based on the totality of the circumstances, Linenberger's ability to give consent to search his pockets was, in no way, overborne by the detective's conduct and his capacity for self-determination was not critically impaired. This finding is supported by substantial evidence in the record that the detective, who the district court found to be credible, made no threats or promises in exchange for the consent to search. Linenberger was not handcuffed or restrained during this encounter with the detective and no guns were drawn. Therefore, the district court's finding that Linenberger's consent to the pat-down was voluntary was not clearly erroneous. Accordingly, evidence obtained as a result of the detective's legal pat-down search was admissible.[1]

Linenberger's final argument is that the consent he gave to the detective to search his boat was invalid, and, therefore, the search of his boat was in violation of the Fourth Amendment. Linenberger cites two cases to support the proposition that, because he had been

---

[1] Because we find that Linenberger's consent to the detective's pat-down search was voluntarily given, we need not address Linenberger's alternative argument that the pat-down was impermissible because the detective lacked reasonable suspicion in violation of the Fourth Amendment.

illegally detained and illegally frisked at the time he consented, his consent to the search of his boat was the product of those previous constitutional violations and therefore invalid. *Wong Sun v. United States*, 371 U.S. 471 (1963); *State v. Tietsort*, 145 Idaho 112, 175 P.3d 801 (Ct. App. 2007). However, as previously discussed, Linenberger was not detained, much less illegally detained, by the detective and was not illegally frisked for weapons. Therefore, Linenberger's argument that his consent to search his boat was invalid because it was the product of previous constitutional violations fails.

Linenberger alternatively argues that, because the detective promised that Linenberger would not go to jail or be arrested if he cooperated, Linenberger's consent to search his boat was not voluntary. The detective told Linenberger that he had been watching the boat, contacted some of the people coming out, and stated that "Nobody has to go to jail. This doesn't have to be a big deal today." While this may have been a ruse, the district court concluded, based on the detective's credible testimony, the use of the ruse did not amount to a promise or threat, was proper police conduct to put Linenberger at ease without the use of weapons or coercion, and did not overbear Linenberger's will or critically impair his capacity for self-determination. Again, no threats or promises were made in exchange for the consent to search, Linenberger was not handcuffed or restrained during this encounter with the detective, and no guns were drawn. Therefore, the district court's finding that Linenberger voluntarily consented to the detective's search of Linenberger's boat is supported by substantial evidence in the record and not clearly erroneous. As such, any evidence obtained as a result of the valid search of Linenberger's boat was admissible.

### III.
### CONCLUSION

The district court's findings that the detective's entry onto Linenberger's boat was legal; that his alleged detention, if any, was valid because it was supported by reasonable suspicion; and that the subsequent pat-down search for weapons and search of Linenberger's boat did not violate his Fourth Amendment rights, were supported by substantial evidence. The district court did not err in denying Linenberger's motion to suppress. Accordingly, his judgment of conviction for possession of a controlled substance with intent to deliver is affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**