**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40210**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 446 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 10, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MARTHA LORRAINE MOORE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Order of the district court denying motion to suppress and judgment of conviction, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

SCHWARTZMAN, Judge Pro Tem

During the course of a home search for a probationer, a probation officer found methamphetamine and drug paraphernalia in Martha Lorraine Moore's purse and arrested her for possession of methamphetamine. Moore filed a motion to suppress evidence, arguing that officers unreasonably searched her home and purse in violation of the United States and Idaho Constitutions. The district court denied her suppression motion, finding that Moore consented to the search of her home and purse. Thereafter, Moore entered a conditional guilty plea, preserving her right to appeal the denial of her suppression motion. On appeal, Moore argues that the court erred because her purported consent was involuntary and, therefore, did not amount to an exception to the constitutional prohibition against unreasonable searches.

1

# I.

# BACKGROUND

At the hearing on the suppression motion, the parties agreed that certain facts occurred. On March 30, 2011, a group of law enforcement officers, consisting of two Idaho Probation and Parole officers and two United States marshals, arrived at Moore's home. They were attempting to execute a warrant authorizing the arrest of Moore's adult son, Ryan McInelly, for a probation violation. Prior to being released to supervision, McInelly had indicated that he intended to live with Moore. When the officers arrived at Moore's home, Moore's teenaged son greeted the officers at the door and allowed them into the home. Immediately upon entering, the officers performed a safety sweep, looking to see if any other people were inside the residence. At that time, officers found that Moore was in the restroom. One officer, Idaho Probation and Parole Officer Guiberson, identified herself to Moore through the restroom door and waited two to three minutes for her to come out. When Moore exited the restroom, she tossed a small black purse onto a bed and had a short conversation with Guiberson. Guiberson found Moore's delay in leaving the restroom and tossing the purse onto the bed to be suspicious. Nonetheless, Guiberson's first focus was on discerning McInelly's whereabouts, as he was not in the home. Guiberson asked Moore to call McInelly and Moore complied. On the phone, Guiberson asked McInelly where he was, and he indicated that he was out looking for a job. Guiberson directed him to meet her at the local probation and parole office.

While the witnesses' testimony was consistent regarding the facts set forth above, their testimony regarding later events differed. Guiberson testified that she had previously explained to Moore that McInelly had consented to a search of his residence. She also explained that permitting McInelly to live at Moore's residence might permit officers to search that residence, consistent with McInelly's consent. Additionally, Guiberson testified that, after performing a protective sweep, she asked Moore for permission to search the entire home and that Moore granted her and the other officers such permission. Thereafter, Guiberson testified that she requested and received specific permission from Moore to search Moore's purse. Conversely, Moore testified that she had given officers consent to search the home, but only for the limited purpose of looking for her son.

In her search of the purse, Guiberson found methamphetamine, a syringe, a spoon, and other paraphernalia. On this basis, Moore was arrested and charged with possession of a controlled substance in violation of Idaho Code § 37-2732(c)(1).

Moore filed a suppression motion arguing that the search of the home violated the Fourth Amendment prohibition of unreasonable searches. The court held a hearing on that matter wherein Guiberson, another probation officer on the scene, the Bannock County narcotics detective, and Moore testified. Paula Aldous, the other probation officer, gave testimony consistent with Guiberson's account. In particular, she testified that Moore specifically consented to a search of the purse.

The district court denied the suppression motion. First, it found that officers were permitted to enter the home in order to execute the arrest warrant and to search for evidence relating to possible probation violations. Second, after finding that Moore was not credible, the court determined that Moore consented to both a search of her entire home and to a search of her purse. Accordingly, the court concluded that the search fell with the consent exception to the Fourth Amendment's prohibition of unreasonable searches and seizures.

On appeal, Moore concedes that McInelly consented to a search of his residence and that officers were permitted to enter the home in an attempt to execute the arrest warrant. However, Moore argues that her supposed consent was constitutionally infirm. First, because officers originally asserted that they had the authority to search the entire home, Moore did not consent, but merely acquiesced to the officers' erroneous assertions. Second, because officers failed to obtain a written record of the consent, the State has failed to meet its burden of proof. Finally, under the totality of circumstances, Moore contends her consent was not voluntary.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

The trial court is the proper forum for the careful sifting of the unique facts and circumstances of each case necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). In short, whether consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen*, 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct. App. 1999).

Moore's first claim on appeal is that the court erred when it concluded that she consented to a search because she merely acquiesced to police power. At the suppression hearing, Moore testified that officers unequivocally claimed the right to search her entire home pursuant to McInelly's consent to search his residence. On appeal, Moore argues that any supposed consent she may have given after that occurred would be mere acquiescence and not a valid consent.

4

We agree that mere acquiescence to a claim of authority does not amount to consent. *State v. Huskey*, 106 Idaho 91, 94, 675 P.2d 351, 354 (Ct. App. 1984). We further agree that when an officer announces that a person has no right to resist a search, the person searched has been coerced and coercion is inconsistent with consent. *Id*. (quoting *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968)). Moreover, the State concedes that a search of Moore's purse would have been outside the scope of McInelly's consent to have his place of residence searched. However, Moore's argument fails as a factual matter. The district court found that Moore was not a credible witness and did not credit her testimony. Conversely, the court accepted Guiberson's testimony. Accordingly, we conclude that the court rejected Moore's claim that police asserted a right to search her home and credited the testimony that police requested permission to search Moore's home. This determination was not clearly erroneous.

Moore's second claim is that the State has failed to meet its burden of proving that Moore consented to the search because officers failed to obtain a written record of the consent. Moore appears to assert that the lack of a written consent is a per se bar to a finding that the search was permitted under the consent exception. An examination of our cases shows that we have frequently affirmed consent-based searches where the consent was verbal and there was no indication that the consent was ever reduced to writing. *See, e.g.*, *State v. Aschinger*, 149 Idaho 53, 232 P.3d 831 (Ct. App. 2009); *State v. Fleenor*, 133 Idaho 552, 989 P.2d 784 (Ct. App. 1999). These rulings are consistent with the federal authority holding that "[w]ritten consent is not essential to the establishment of a valid consensual search." *United States v. Franklin*, 630 F.3d 53, 60 (1st Cir. 2011) (quoting *United States v. Barnett*, 989 F.2d 546, 555 (1st Cir. 1993)); *see also United States v. Dean*, 550 F.3d 626, 631 (7th Cir. 2008) ("Written consent, of course, is not constitutionally required."); *United States v. Carrate*, 122 F.3d 666, 670 (8th Cir. 1997) (holding that officers are not required to use a written consent form). For all of these reasons, we conclude that this claim is without merit.

Moore's final contention is that her purported consent was not voluntary, but mere acquiescence to the five armed officers on the scene. The district court recognized that consent must be "freely given" to be effective. When recounting the factual background of this case, it noted the number of officers on the premises and that they were "in uniform." Thereafter, it concluded that Moore consented to the search and that her consent was effective. Implicit in this reasoning is the court's finding that Moore's consent was "freely given" or voluntary.

5

As stated above, the State bears the burden of proving "that the consent was voluntary rather than the result of duress or coercion, direct or implied." *Jaborra*, 143 Idaho at 97, 137 P.3d at 484 (Ct. App. 2006); *see also Schneckloth*, 412 U.S. at 221. A person's consent is constitutionally infirm due to involuntariness when that person's "will has been overborne and his capacity for self-determination critically impaired." *Jaborra*, 143 Idaho at 97, 137 P.3d at 484 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). One factor in determining whether a consent was voluntary is the presence of numerous law enforcement officers. *Jaborra*, 143 Idaho at 97, 137 P.3d at 484; *see also Castellon v. United States*, 864 A.2d 141, 155 (D.C. 2004); *United States v. Jones*, 846 F.2d 358, 361 (6th Cir. 1988). However, "the presence of multiple police officers does not, standing alone, establish coercion." *Jaborra*, 143 Idaho at 97, 137 P.3d at 484.

In this case, there is very little evidence of coercion. Indeed, the evidence of coercion amounts to little more than noting the number of officers on scene. Conversely, several facts in the record support the district court's determination that the consent was voluntarily given. First, there is no testimony that any officer drew, brandished, or otherwise made use of a firearm. Second, the record shows that the officers were not all in the home at one time and they did not crowd Moore. Indeed, only one other officer was close enough to Moore to overhear Guiberson and Moore's conversation. Third, the record does not include any evidence of intimidating statements or threats.

The number of officers on scene may contribute to a determination that consent was not freely given. For example, in *Jaborra* the defendant was

> surrounded by three policemen who have come to the scene in three different police cars. It is late at night (or more precisely in the wee hours of the morning). One or two of the cars have their overhead lights flashing. The officers are in uniform and armed. The citizen is grabbed by the arm, knocked off-balance and told to put his hands on his head. His driver's license, which he gave to one of the deputies, has never been returned.

*Id.* at 98, 137 P.3d at 485. In that case, we upheld a determination that the consent was constitutionally infirm because it was involuntarily given. However, in other cases, we have upheld lower court findings that consent was voluntary even though multiple officers were on scene. *See, e.g.*, *State v. Linenberger*, 151 Idaho 680, 687, 263 P.3d 145, 152 (Ct. App. 2011); *State v. Moran-Soto*, 150 Idaho 175, 181, 244 P.3d 1261, 1267 (Ct. App. 2010). Here, our

6

standard of review "requires that we accept a trial court's factual findings unless they are clearly erroneous." *Linenberger*, 151 Idaho at 686, 263 P.3d at 151. On this record, we cannot conclude that the district court's determination was clearly erroneous.

## III.

## CONCLUSION

For the reasons set forth above, we conclude that Moore failed to show that the court erred in finding that Moore consented to the search of her purse. Therefore, the motion to suppress was properly denied and the judgment of conviction is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**