**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46807**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: October 14, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| AARON SHANE TOWER, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Aaron Shane Tower appeals from his judgment of conviction for possession of methamphetamine, Idaho Code § 37-2732(c), entered on his conditional guilty plea. He asserts the district court erred when denying his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At the hearing on Tower's motion to suppress, Boise Police Officer Dustin testified as follows: On July 11, Tower's mother contacted the Boise Police Department (BPD) and reported her son, Tower, had threatened to kill her with a firearm; she was out of town; Tower's grandmother was taking care of Tower's mother's house in her absence; and she did not want Tower on her property.

1

The next day, on July 12, Officer Dustin twice encountered Tower near his mother's house. Initially, Officer Dustin responded to a neighbor's complaint that Tower was camping in the front yard of a vacant house across the street from his mother's house. Officer Dustin told Tower he could not camp on the neighbor's yard and asked him to leave. After what Officer Dustin described as a "contentious conversation," Tower agreed to leave.

Later that same day, the BPD received another complaint that Tower was still across the street from his mother's house but had moved to a common area. Officer Dustin was present when other officers told Tower he could not camp in the neighborhood common area. During this encounter, Officer Dustin spoke to Tower's grandmother, who he described as "extremely fearful" and "scared."

The following day, on July 13, Officer Dustin responded to a 911 call from Tower that "his grandmother was holding a gun to his head." While en route to the scene, Officer Dustin was provided information entered on a call log by the 911 dispatcher speaking to Tower, which read that the calling party "advised he [was] previously not allowed on property. He is now, and she is not aware." Officer Dustin testified that this information was "odd" and "confusing" because, according to his knowledge at that time, "Tower was still unwelcome there. He was trespassing. He was not supposed to be at the property."

When Officer Dustin arrived at Tower's mother's house, Tower calmly walked out of the garage and down the driveway, and Officer Dustin immediately told Tower he was under arrest for trespassing. According to Officer Dustin, Tower "immediately resisted" and was "verbally . . . agitated." Despite being told he was under arrest, Tower walked away from Officer Dustin and began taking off his jacket. Eventually, after Officer Dustin pointed his Taser at Tower, Tower complied, although he struggled while being handcuffed. In a search incident to Tower's arrest, a baggie containing methamphetamine was found in his jacket pocket. Thereafter, Officer Dustin learned from Tower's grandmother that Tower actually had permission to be at his mother's house. Unbeknownst to Officer Dustin, earlier on July 13, Tower's mother had called someone at the BPD to inform them Tower was allowed on her property.

As a result of the July 13 encounter, the State charged Tower with possession of a controlled substance and with resisting or obstructing an officer. I.C. §§ 37-2732(c), 18-705. Tower filed a motion to suppress, arguing that the officers did not have probable cause to arrest

2

him for trespass. At a hearing on this motion, Officer Dustin and Tower's mother both testified. At the conclusion of that hearing, the district court orally denied Tower's motion. Thereafter, Tower conditionally pled guilty to possession of methamphetamine and reserved his right to appeal the court's denial of his motion to suppress. In exchange, the State dismissed the charge of resisting or obstructing an officer. Tower timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Tower asserts the district court erred when denying his motion to suppress. Specifically, Tower argues "he was unlawfully arrested for trespassing absent probable cause." He contends that the arresting officers failed to "make themselves aware of the changed status"--namely that his mother had given him permission to be at her house--and that "a good-faith exception is unavailable to the officers for their failure to obtain accurate information as to the status of [Tower's] invitation to be on the property." The State responds that the officers had probable cause to arrest Tower for resisting or obstructing an officer, and thus their search of Tower was a valid search incident to a lawful arrest. We agree with the State.

Tower's argument that Officer Dustin lacked probable cause to arrest him for trespass ignores the substance of the district court's ruling. Specifically, the district court ruled that:

> [The officers] had a right to detain [Tower] and investigate more fully based just on what they already knew. Then he starts resisting and behaving strangely, then--then it justifiably moves up to the next level, which is where they can basically hang onto him.

3

> And at that point, he then resists and obstructs the officers, so then they do have grounds to do a search incident to arrest. And then we have the drugs being discovered. So there is no basis for a suppression in this case.

Although the court did not refer to "reasonable suspicion" or "probable cause" when pronouncing its oral ruling, the court essentially ruled that under the totality of the circumstances, Officer Dustin had reasonable suspicion to detain Tower; in the process of attempting to detain Tower, probable cause developed to arrest him for resisting or obstructing an officer; and during a search incident to a lawful arrest, the officers discovered the methamphetamine. Because Tower does not challenge this ruling, his appeal necessarily fails. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling that party waives issue on appeal if either authority or argument is lacking).

Regardless, both substantial evidence and the applicable legal principles support the district court's ruling. Whether an investigative detention is reasonable requires a dual inquiry-- whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific, articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *State v. Linenberger*, 151 Idaho 680, 684-85, 263 P.3d 145, 149-50 (Ct. App. 2011). "Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *Id.* at 685, 263 P.3d at 150.

Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian*, 129 Idaho at 136, 922 P.2d at 1062. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Julian*, 129 Idaho at 136, 922 P.2d at 1062. That is, would the

4

facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.*

A search incident to a valid arrest is an exception to and does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Pursuant to this exception, the police may search an arrestee incident to a lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Moore*, 129 Idaho at 781, 932 P.2d at 904. The permissible scope and purposes of a search incident to an arrest is not limited to the removal of weapons but includes the discovery and seizure of evidence of crime. *Moore*, 129 Idaho at 781, 932 P.2d at 904.

Applying these legal principles, Officer Dustin had reasonable suspicion to detain Tower under the totality of circumstances. These circumstances included that Officer Dustin was aware Tower had previously threatened his mother with gun violence; Tower's mother did not want him at her house; the officers had a day earlier asked Tower twice to leave the vicinity near his mother's house; his grandmother who was at the house was afraid of Tower; and Tower had just reported his grandmother was holding him at gunpoint.

Based on these facts, Officer Dustin had reasonable suspicion to detain Tower to investigate the situation further when Officer Dustin located Tower on his mother's property. That Officer Dustin was not yet aware that Tower's mother had actually given him permission to be at her house earlier in the day does not eliminate Officer Dustin's reasonable suspicion, which is evaluated based on the facts known to him at the time he detained Tower. *See, e.g.*, *Linenberger*, 151 Idaho at 685, 263 P.3d at 150 ("Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop.").

Further, that Officer Dustin informed Tower he was under arrest for trespass does not undermine Officer Dustin's reasonable suspicion. As Officer Dustin testified at the suppression hearing, based on the totality of the circumstances, he intended to restrain Tower to investigate the situation regardless of his alleged crime:

> Q. So why didn't you stop at that point [before handcuffing Tower] and investigate further?
> A. Well, I had to--based on the totality of the weapon involved, his demeanor, everything, my thinking was I'm going to put him in handcuffs

5

for everybody's safety and make sure there is not a weapon involved. And then we would have plenty of time to talk about, you know, what he was saying.

Q.   So, effectively, you told him he was under arrest and your intent, though, was to--regardless, your intent was to restrain him?

A.   Yes.

Q.   But you intended to conduct additional investigation?

A.   Of course, I did.  Yes.

Once Tower resisted Officer Dustin's efforts to detain Tower to investigate, probable cause arose to arrest him for resisting and obstructing an officer.  *See* I.C. § 18-705 (defining resisting or obstructing as willfully resisting, delaying, or obstructing any public officer in the discharge or attempt to discharge his official duty).  Based on Officer Dustin's description of Tower's conduct after Officer Dustin informed Tower he was under arrest, a reasonable person would have honestly believed Tower was resisting arrest.  *See Julian*, 129 Idaho at 136, 922 P.2d at 1062 (defining "probable cause" as possessing information leading a person of ordinary care and prudence to honestly believe individual is guilty of crime).

In sum, Officer Dustin had reasonable suspicion to detain Tower to investigate, particularly based on the report that a firearm may be involved.  When Officer Dustin attempted to detain Tower, he resisted by walking away and struggling.  At that point, Officer Dustin had probable cause to arrest Tower for resisting or obstructing an officer.  Thereafter, the officers discovered methamphetamine on Tower's person in a search incident to a lawful arrest.  *See Moore*, 129 Idaho at 781, 932 P.2d at 904 (ruling permissible scope and purpose of search incident to an arrest includes seizure of evidence of crime).  Accordingly, we hold that the district court correctly denied Tower's motion to suppress.

## IV.

## CONCLUSION

Tower's appeal fails because he did not challenge the district court's ruling that Officer Dustin had reasonable suspicion to detain Tower and probable cause to arrest him for resisting or obstructing an officer.  Moreover, the applicable legal principles and substantial evidence support the district court's denial of Tower's motion to suppress.  Accordingly, we affirm Tower's judgment of conviction.

Judge GRATTON and Judge LORELLO **CONCUR**.